ALAN HIMMELFARB- SBN 90480
KAMBEREDELSON, LLC
2757 Leonis Boulevard
Los Angeles, California 90058
t: 323.585.8696

*Attorneys for Plaintiff* TINA BATES
and the putative class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| TINA BATES, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>SENDME, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. C 08 5361 SBA<br><br>**ORDER GRANTING PLAINTIFF TINA BATES' MOTION TO REMAND**<br><br>**[28 U.S.C. § 1447(c)]**<br><br>Date:  April 7, 2009<br>Time: 1:00 p.m.<br>Judge: Saundra Brown Armstrong<br>Date Action Filed: September 9, 2008<br>No Trial Date Set |

Defendant removed this action from the Superior Court for the State of California, County of San Francisco, to the United States District Court for the Northern District of California pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

For the following reasons, the Court finds that it does not have jurisdiction over this matter and therefore, the case should be remanded back to the San Francisco Superior Court.

## I. BACKGROUND

On September 9, 2008, Bates filed a putative class action complaint ("Complaint") in the San Francisco Superior Court against Defendant Sendme, Inc. ("Sendme"). Bates alleges that Sendme is a "mobile content provider" that creates and distributes, among other things, music ringtones, wallpapers, games and news for use will cellular telephones and other mobile devices. (Compl. ¶¶ 5-6.) Bates further claims that when a consumer purchases content from a mobile content provider such as Sendme, the content provider forwards the consumer's cell phone number along with the amount to be charged to a billing aggregator. (Compl. ¶ 10.) The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone. (Compl. ¶ 10.) Bates alleges, *inter alia*, that Sendme engaged in a scheme with its industry partners to charge consumers for unwanted and unauthorized mobile content services. (Compl. ¶¶ 12-55.) Bates further alleges that Sendme could end this form of illegal billing in an instant:

> All it would have to do to ensure that they are obtaining the consent of the charged party is agree to process a unique 'access code' for each customer account, provided by the carrier to the account holder and his/her authorized representatives at the time it is opened, and require that it be produced anytime a third-party attempts to charge the account. If a matching code is not provided, no charges would be included on the customer's billing statement.

Compl. ¶ 35.

Bates alleges that in or about 2007, she was charged by Sendme for unwanted mobile content services on her cellular telephone bill in the form of premium text messages. (Compl. ¶ 51.) Plaintiff alleges that at no time did she authorize the transactions and at no time did

Sendme verify her purported authorization of the charges.  (Compl. ¶ 52.)  Bates alleges that Sendme has not provided a full refund of the unauthorized charges, nor implemented any adequate procedure to ensure that such unauthorized charges would not appear in future billing periods.  (Compl. ¶ 55.)  Bates alleges that Sendme knowingly maintains a system that allows for erroneous charges to retain its respective shares of the improper collections.  (Compl. ¶ 36.)

Bates brings this action on behalf of herself and a class of similarly situated wireless subscribers in the nation who have suffered losses as a result of incurring unauthorized charges on their cellular telephone bills from or on behalf of Sendme.  (Compl. ¶ 56.)  She asserts that the proposed class consists of thousands of individuals.  Bates asserts claims, on her own behalf and on behalf of the class, for violation of the California Legal Remedies Act under California Civil Code, section 1770, violation of California's Unfair Competition Law under California Business and Professional Code section 17200, restitution/unjust enrichment, and tortious interference with a contract. Bates seeks an injunction to protect her interests and those of the putative class from Sendme's allegedly unfair and deceptive billing practices.  She also seeks economic, monetary, actual, consequential and compensatory damages, exemplary damages if Sendme's conduct is proven willful, attorneys' fees and costs and pre- and post-judgment interest on behalf of herself and the class.

On November 26, 2008, Sendme removed the case to this Court.  In its notice of removal, Sendme alleged that this Court has original jurisdiction over this action under CAFA.  Bates moved to have the case remanded to state court on December 29, 2008.  Bates concedes that Sendme has shown minimal diversity and that the lawsuit concerns over 100 persons. Thus, Bates' instant motion to remand rests solely on the contention that Sendme has not met its burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds $5 million as required by CAFA.

## II. LEGAL STANDARDS

Pursuant to 28 U.S.C. § 1441(a), often referred to as "the removal statute," a defendant may remove an action to federal court if the plaintiff could have filed the action in federal court

initially.  28 U.S.C. § 1441(a); *see also Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1393 (9th Cir.1988).  The removal statute is strictly construed against removal. *Id*.  The matter therefore should be remanded if there is any doubt as to the existence of federal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 565 (9th Cir. 1992).

Under CAFA, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and cost, and is a class action [with minimal diversity]." 28 U.S.C. § 1332(d)(2). "[U]nder § 1332(d)(6), the claims of class members are aggregated to determine whether the amount in controversy exceeds $5,000,000." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 684 (9th Cir. 2006). When it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant must establish by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Guglielmino v. McKee Foods Corp*., 506 F.3d 696, 699 (9th Cir. 2007).

### III. ANALYSIS

**A.     Compensatory Damages**

Defendant argues that the amount in controversy should include Sendme's total revenue generated from mobile content sales—a figure that exceeds $5 million.  Defendant cites *Spivey v. Vertrue, Inc*., 528 F.3d 982 (7th Cir. 2008) in support of its argument.  Def. Opp. at 6:9.  In *Spivey*, the complaint alleged that Spivey's credit card was charged without authorization and that Vertrue's practices were common to all class members. *Id*. at 985.  The complaint also alleged that making unauthorized charges was a standard practice at Vertrue. *Id*.  The court held that the allegations put into controversy the propriety of all of Vertrue's charges. *Id*. at 985-86. Sendme argues that the Complaint puts their total revenue in controversy because it alleges that Sendme "routinely processes charges for mobile content that have not been authorized by the charged party" and "has for years been systematically, repeatedly and without authorization, billing its customers for purchase of products and services not agreed to by those customers." (Compl. ¶ 16.)  Sendme argues that because the allegation essentially is aimed at Sendme's

standard content delivery and billing system, it follows that as in *Spivey*, the entire revenue should be included in the amount in controversy. Def. Opp. at 7:2-9.

However, the Court concludes that Sendme characterizes the Complaint too broadly. The Complaint alleges only that the Defendant's billing process increases the likelihood of false charges being added to the cell-phone bills of consumers. (*See* Compl. ¶ 11.) Moreover, the Complaint defines the class to include only "wireless telephone subscribers who suffered losses or damages as a result of Sendme billing for mobile content products and services not authorized by subscriber." (Comp. ¶ 56). The claim thus includes only *unauthorized charges*, not *all revenues* from *all customers*. Sendme's total revenue does not establish that the amount-in-controversy meets or exceeds $5 million.

**B.     Injunctive Relief**

There is no question but that along with the several prayers for damages Plaintiff includes mention of injunctive relief, as well as declaratory relief. However, she does not specify any particular injunctive relief. In her prayer for relief she seeks "injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class". (Compl. p. 16, Prayer for Relief at ¶ f.). In the other paragraphs relied on by Sendme, plaintiff "seeks an order enjoining Defendant's collective CLRA violations alleged herein, restitution of property gained by the CLRA violations, and court costs and attorney's fees under the CLRA", (Compl. ¶ 69); "seeks an order enjoining Defendant's unfair competition alleged herein, and restitution of property gained by such unfair competition... (Compl. ¶ 71.) Nowhere does plaintiff specify any particular injunctive relief.

Nevertheless, Sendme argues that the injunctive relief Bates requests is contained in paragraph 35 and that the costs to Sendme of complying with the injunctive relief contemplated in paragraph 35 exceeds $5 million. In support thereof, Sendme submits a declaration by Russell Klein, Sendme's Chief Executive Officer, to show the costs that would be incurred to comply with paragraph 35. (See Dkt. No. 27).

The Court finds that Klein's declaration does not establish that at least $5 million is at

[Proposed] Order Granting                    5                              No. C 08 5361 SBA
Plaintiff's Motion to Remand

issue in this case because it is based on a speculative premise, namely that paragraph 35 describes the type of injunctive relief being sought or likely to be granted. This relief is not referred to specifically or even generally by any of the prayers for injunctive relief. It is, in fact, nothing more than a suggestion of how Sendme could have, but failed to prevent unauthorized charges. It precedes paragraph 36 which alleges that "instead of implementing such a simple safeguard, Defendant ha[s] intentionally created, maintained, and promoted a system that encourages fraud at every step." (Compl. ¶ 36.) Thus, paragraph 35 merely suggests what Sendme could have done to avoid this.

## C. Punitive Damages

Sendme argues that punitive damages should be included when determining the amount in controversy. (Not. of Removal, Dkt. No. 1, ¶ 16.) While Sendme is correct as to the applicable legal principle, its argument is not dispositive in the instant dispute. An award of punitive damages necessarily is related to the amount of compensatory damages awarded. *Munro v. Golden Rule Ins. Co.*, 393 F.3d 720, 721-22 (7th Cir. 2004); *see also Abrego Abrego*, 443 F.3d at 689. As discussed above, the amount of compensatory damages to which the class may be entitled is too speculative to be determined. Adding punitive damages to the equation only increases the speculation.

## D. Attorneys' Fees

The parties agree that attorneys' fees should be included in the amount in controversy, but they disagree as to the proper estimation of the potential fees in this case. Bates contends "the proper estimate of attorneys' fees is the amount of fees incurred up until the time of removal." (Pl. Mot. at 6:27-28, 7:1-2.) Sendme argues that 25% of the common fund is a fair estimate of attorneys fees" (Dkt. No. 1 ¶ 17.) and then asks the Court to take judicial notice of attorneys' fees awarded to Plaintiff's counsel is settlements of allegedly similar cases as a basis for determining the amount of fees in this action. However, Sendme provides no legal authority for the proposition that attorneys' fees awarded in those settlements should be considered in calculating the amount in controversy in this case. Further, even if the Court were to assume

that a reasonable estimation of potential damages could be reached at this time, Sendme does not offer any showing as to how the attorneys' fees based on such damages would be calculated.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion to remand is **GRANTED**. The Clerk of Court is instructed to transmit forthwith a certified copy of this order to the Clerk of the Superior Court for the County of San Francisco.

**IT IS SO ORDERED.**
DATED: 4/6/09

_____
HONORABLE SAUNDRA BROWN ARMSTRONG
UNITED STATES DISTRICT JUDGE